23-50840 United States v. Contreras May it please the Court, my name is Kim Keller. I'm here today on behalf of Appellant Defendant Tegan Contreras. The question that this Court will be asking today is, what does it take to permanently waive your right to Second Amendment, the right to bear arms? In this case, you have a predicate offense first, and Mr. Contreras was charged and convicted of being an unlawful user of marijuana while possessing a handgun. That happened back in 2020. The current offense, the one that this Court is reviewing today, is being charged with felon in possession of a gun. The felony, the predicate offense, is that unlawful user felony. The reason that is such a substantial point in the analysis of this Court is because there is no other case where the predicate offense is something like unlawful user of marijuana that serves as the basis, the stepping stone, to get up to the felony in possession charge. And the reason that this Court should be very mindful of the significance of that predicate offense is because this Court told us in Connolly that unlawful user with gun possession is pretty much unconstitutional as a crime. In Connolly, a recent case issued by this Court, this Court looked at, does that statute, 922G3, is that constitutional? Can you criminalize the mere possession of a gun while the person is also using marijuana? And when I use the word use, that's a very loose term. In the CFRs, prosecutors are guided that they can take the possession of the gun and the use of marijuana, and those could be up to a year apart from each other. So there's not a causal nexus in the possession and the use. So that predicate offense, G3, is something that this Court has told us when, as applied in most circumstances, is unconstitutional. So Mr. Contreras has that stepping stone offense, unlawful user. Now, that happened in 2020. We just got the precedent from this Court in Connolly just this year. So he will need to do something about challenging that predicate offense. But at the moment, the case before the Court today, what this Court must consider is the fact that the predicate offense, unlawful user of marijuana plus a gun, is an unconstitutional crime that has been used to step up to now a felony in possession charge, a second charge, and that's the charge that this Court is considering today. When this Court conducts its analysis, it will apply a test that was established for us in Bruin and then modified slightly in Rahimi. Those are the two most recent Supreme Court cases that have addressed these issues. And as this Court knows, in Section 922, there's nine different ways to charge someone for use of a gun, and it's use of a gun plus some other thing. Most of those within 922 are a temporary disarming of individuals. So, for example, unlawful use of marijuana plus a gun, you're only disarmed, you're only not allowed to use your gun when you're high, when you're under the influence. But 922 G1, the offense before this Court today, felon in possession, is a permanent disarmament, meaning you don't just, you're not just banned from using a gun when you're high or when you're under a domestic violence order, like occurred in Rahimi, you're banned from using a gun forever. And so that's a very bold law. And what this Court, or what the Supreme Court has told us, is how to analyze whether 922 G1 is constitutional, this Court first, of course, looks at the text of the Second Amendment. The text is very clear. The people in this country have the right to bear arms. Not law-abiding citizens, not citizens without a conviction, not citizens that aren't using drugs, the people. So it applies to everyone. And in fact, in the Bill of Rights, the term the people is used only five times. So that's not something that we see in every single constitutional amendment, but it is there in the Second Amendment. So the text tells us that Mr. Contreras falls within the group of people protected and given a right under the Second Amendment. Then the next step that we were told to apply under Bruin and Rahimi is, can the government carry its burden? And the burden is on the government in this situation. Can the government carry its burden of showing us that there was another law on the books back when the Second Amendment was adopted that would be a, the term is historical analog to the current law? So is there another law that was on the books back when the Second Amendment was adopted that would be the same thing, kind of, not a historical twin, not an exact replica, but something that I think the terminology by Rahimi was relevantly similar to that. And so when we look at, is there a law on the books? And this court, or Bruin, told us that not all constitutional history, it's not created equal. And so when we hear from the government, when the government is trying to carry its burden of proof of showing us a historical analog to 922G1, the most powerful and important precedent is a law on the books when the Second Amendment was adopted. And so when we look down further, whenever history, looking back at history, because in 1968, the Gun Rights Act was something, that was the precursor to G1. And the precursor of G1, the Gun Control Act, took away the rights to own a gun of violent offenders. So that's the precursor. Mr. Contreras is not a violent offender. He, his only felony on the books that could serve as a stepping stone to this, is being an unlawful user of marijuana while possessing a gun. And when Your Honors look at the circumstances surrounding that crime, what Your Honors will find is Mr. Contreras was driving his car. He was pulled over for a traffic stop. When the officer walked up to him, he could smell marijuana on his person and in the car. He was asked, can I search your car? Mr. Contreras said, yes. This was an 18-year-old kiddo at this time. The car was searched. Marijuana was found in the car. They called it shake, so the residue of marijuana. And then they asked him, we're going to go ahead and arrest you. Can we search your phone? Of course, Mr. Contreras again said, yes. And then when looking at Mr. Contreras' phone, they saw images of a gun and marijuana in the same picture. They also saw images of him apparently blowing smoke. We don't have these images in the record. We just have the probation officers recounting of what it said. And the probation officer in the PSR said there were images of him smoking something. Now, from a photo, you don't know what he's smoking, but he was smoking something and had a gun in his possession. So that's the images. So what the police officers did back in 2020 was they said, well, we're going to go search your house and look for that gun. So, mind you, this means while he was driving and while he was stopped for the traffic violation, he didn't have the gun on his person at that time. But because of the CFR that allows prosecutors to use something within a year's time, gun possession and marijuana usage, smash it together for a user in possession charge, that's what he was charged with. So he wasn't charged with trying to flee. He wasn't charged with any type of violence. He was charged with being a user in possession. And his only two priors before this were two misdemeanor crimes, possession of less than two ounces of marijuana. So I would label Mr. Contreras as a drug guy, not someone who is a violent offender. So he got that user in possession charge. That's what's now being used as the predicate offense for the felon in possession charge. And the question for this court is, is being convicted of a user in possession charge, is that enough to ban your right to possess a handgun for the rest of your life? And in Mr. Contreras' case, from the time he was 18 years old, and there's not a bringing back of that right, a revival of that right as there is in some of the other 922 sections, which are temporary. And so when this court is hearing from the government today and is trying to hear, is there a historical analog, a law on the books back when the Second Amendment was adopted that mirrors 922 G1, felon in possession, is there another law that was on the books back when the Second Amendment was adopted that is a permanent penalty, taking away the gun? What the government has spoke of in other cases similar to this is laws that would allow for the death penalty. The only law that's been ever found by a court to quantify a death penalty charge for something remotely relevant to a G1 is theft. You mentioned other cases. What about our opinion in Diaz? So Diaz is one of the most important cases this court will consider when looking at this case. But Diaz was a very different case than what the court is considering today. In Diaz, this court did tell us that there are circumstances where a G1 offense, felon in possession, can be supported by a proper predicate offense. In that case, the predicate offense was theft. And in that case, the government was able to prove that back in the day when the Second Amendment was adopted, theft was punishable by capital punishment. And so that's a permanent punishment. So this court in Diaz found that a predicate offense of theft is sufficient to uphold the felon in possession charge. We don't have theft here. We have marijuana possession twice as a misdemeanor. I think he got five days in jail for each of those. Oh, theft is a nonviolent offense, isn't it? It was, but our founders decided that it was something that warranted the death penalty. We don't have a predicate offense in this case that warranted the death penalty back when the Second Amendment was adopted. So Your Honor is correct. Theft can be nonviolent. And I actually think I saw robbery being mentioned as well. So the word theft was used in Diaz, but some of the discussion in other cases, it's talking about robbery, which does add an element of violence or threats of violence, at least. But in this case, if we take Diaz and we apply Diaz and we apply Connolly to this case, the proper disposition would be a finding or a holding that G-1 is unconstitutional as applied to Mr. Contreras. Do we look at the underlying conviction or the conduct surrounding the underlying conviction? Great question, because depending on which opinion you read, you see a very narrow view. Just look at the underlying conviction. But then in other cases, you'll see a more broad brush where they look at the circumstances as well. If Your Honor looks at just the underlying offense, unlawful user in possession, you do not have something that fits squarely within Diaz. You have mere possession with a gun, or marijuana plus possession of a gun, which this Court told us in Connolly is not constitutional. If Your Honor looks at the additional underlying circumstances, you still don't have a Diaz case because, I'm sorry, Your Honor. Please finish. Under this circumstances, you have driving a car with shake of marijuana in the car, gun not on his person, completely compliant with the police officers. So no indication whatsoever of anything regarding theft, violence, anything like that. Well, as I understand it, the shake was found in the current stop that led to the conviction that you're challenging now. But if we're looking at the underlying conduct for the 2020 conviction, what was found was 33 grams of marijuana, which is not user quantity. The factual basis and the criminal complaint both pointed out that he appeared to be smoking marijuana and possessing a firearm that was later recovered. And he had a 50-round drum magazine, two other high-capacity magazines, and four regular magazines for a total of 123 rounds of ammunition. So isn't this factually very distinct from Connolly? It is factually distinct. I agree with that, Your Honor. However, the gun and the ammo was not on his person at the time. And on top of that, even though there is an allegation of how much marijuana was found, we do not have a charge. So if it was indeed 33 ounces of marijuana found, there was no charge of drug possession, drug distribution. He was charged merely with user and possession, which to me questions not the veracity, but how good was that evidence? Because it's kind of interesting that you don't have a charge for drug distribution. That's kind of one of the first things you see that comes out of those cases. Sure. But he was in a car with four other people. Correct. And so we don't know who possessed those. And what he said, the only thing he said whenever he was questioned in that case was, I'm a user, but I don't sell drugs. But you did tell us it was his car, and at least some of the drugs were found under the driver's seat. That is correct. If it was the driver. That's correct. But no linkage as far as a charge whatsoever to that. And again, the possession of drugs alone is not going to be sufficient. The use of drugs alone is not going to be sufficient. Because we're talking about the permanent ban of being able to possess a firearm, which is the Second Amendment that is for all people. And so what we're looking for, unless this Court is going to expand DS in this case, what we're looking for is theft or some form of violence. If this Court were to use that with regard to Contreras, this Court would be expanding DS and limiting Connolly by saying, having drugs in your car, but you're not charged for it, is a sufficient predicate for a felon in possession charge. And I don't know that this, of course, this Court will do whatever it chooses, but there is not another case on the books from all the circuits that has the stepping stone being unlawful user for a felon in possession charge. Has any circuit said that we must apply the categorical approach in these cases? No, Your Honor. And in fact, one court actually said the categorical, may I answer your question, Your Honor, one court said that the categorical approach was probably not the best route to follow. But what we do have is the two-prong test, text of the Second Amendment and then is there a historical analog. Any other questions, Your Honor, or so? Thank you very much. May it please the Court. Lauren Tanner Bradley for the United States. I'd actually like to start by talking about the two ways that this Court could resolve this case, because I did not actually hear an argument in response to one of those, which is that the Third Circuit and the Sixth Circuit have both found that this nation has a long-standing tradition of disarming principles when an individual is serving a criminal sentence. It's undisputed here that Mr. Contreras was on supervised release at the time of the offense. And because of that, 922G1 can be constitutionally applied to him. The Moore Court got it right. The Sixth Circuit agreed. The Seventh Circuit, actually pre-Rahimi, said similarly that parolees do not have a Second Amendment right. So this Court can resolve this case based on that precedent alone, that this individual does not have a Second Amendment right. He cannot show that 922G1's application to him deprived him of that right while serving a criminal sentence. In those cases, Counsel, was the possession that led to the revocation the same possession that was the subject of the 922G1 offense? In the Moore case, it was the individual was on supervised release for a 922G1 offense. And so it's actually very similar here. And the Moore Court did not find it necessary at all to analyze the predicate felony convictions for that crime. They simply said that an individual serving a term of supervised release does not enjoy a Second Amendment right to possess firearms. And so, consistent with our nation's history, you can apply it in that case. The Goins case from the Sixth Circuit actually involved an individual who had multiple DUI offenses and simple possession offenses. So also not that different from what we're seeing here. And in that case, they said the same thing, that this individual who was on probation for those offenses at the time did not enjoy a Second Amendment right to possess firearms. And so 922G1 could be constitutionally applied to him. In the Seventh Circuit, that individual had a much more significant criminal history, but the courts similarly found that this was not an individual who enjoyed a Second Amendment right. Now, I think also that, you know, that's sort of the narrow, the narrow reasoning that this court could apply and it would be consistent with what other courts have done. There's not been a single circuit court that has said that an individual serving supervised release, that the application of 922G1 to that person would be inconsistent with our nation's history. If this court wants to move to the broader principle that this nation has a longstanding tradition of disarming individuals who've committed serious crimes and who are, you know, pose a special danger of misusing firearms, it could do that too. In reference to that argument, I will address a couple of points that were made by Mr. Contreras. I think that Mr. Contreras wants to draw this court to Connolly quite a bit, right? But in this situation, Mr. Contreras has never disputed the validity of his 922G3 conviction. And he can't use these proceedings to collaterally attack that conviction now. There's a lot of precedent on this in the Supreme Court and also this court that you cannot collaterally attack a conviction here based on 922G1's application to you. It's a situation where this individual, you know, there are ways that you can attack that conviction, right? And this also goes to this idea that it's a permanent ban. I think that we, I want to push back on that idea. This is permanent disarmament. There are aspects of 922G1 that allow you to have your civil rights restored. This is a situation where he could obtain a pardon, have that conviction set aside. He could have it vacated. There are avenues for relief, as narrow as those possibilities may be. But also, you know, sort of going back to Connolly, I think it's important that Mr. Contreras, this is a valid conviction even under Connolly's standards. Connolly says that an individual carrying a firearm while intoxicated would be consistent with this nation's tradition, right? And this is an individual who we have photographic evidence posing with firearms, marijuana, and also appears to be smoking marijuana. Those are facts that he actually agreed to in the factual basis for his plea agreement. And I did want to point the Court to the record in those instances. That's at the supervised release proceeding record, 50845.12, page 121 and 22, and page 125. And so this case is very, you know, this case is very factually distinct from Connolly in that this is an individual who is not an occasional user of marijuana who the Court was concerned was being punished for prior substance use. This was an individual carrying a firearm while smoking marijuana. It's a demonstrated dangerous misuse of firearms. And so I think here, even if there was some concern that this is a constitutional application of 922G1. And I also want to push back on the permanency idea because there has not been a single Court post-Rahimi that has said that 922G1 is unconstitutional as applied. This would be the first Court to do so. And in addition to that, this Court in Diaz found a tradition of permanent disarmament based on our nation's longstanding history. And, you know, in Diaz, the Court first started with the theft conviction and compared it to horse theft, right? And that's a pretty close analog. Honestly, that's one of the closer analogs we're going to get. And the Court didn't stop there, right? I think that's really significant, that the Diaz Court did not stop at horse theft. It continued on. And it talked about the going armed laws. And it talked about the precursors to the Second Amendment. And how this evidence, taken as a whole, was indicative of a public understanding that individuals could be disarmed for committing serious crimes. And I also want to push back on this idea that the United States has to prove that there was some predicate felony at the time. I think that what Mr. Contreras wants to do is he wants to tell this Court, you have to find a historical twin. We need an analog that mirrors what the founders were doing. But that's not the case. Bruin and Rahimi both said that this is not, that you do not need a dead bringer, you do not need a historical twin. What we've been asked to do under Rahimi is to look at the historical evidence as a whole, take that evidence together, discern broad principles, and ascertain whether the modern regulation is relevantly similar to what was considered permissible at the founding. And I think that when you look at the historical evidence, you can see this through line of history where legislatures were understood to be able to disarm individuals who posed a danger to the public and who posed a danger of misusing firearms. I also want to push back on the idea that this Court has to find violence, some showing of violence. And that is not the focus of the Court in Rahimi. The focus is not on violence. In fact, it's on preventing violence, right? The surety laws, the going arm laws. This is all about protecting the public from a danger. It's about preventing that. It's about protecting from the threat of violence. And I think that here we have an individual who is going to the going arm laws, right? These going arm laws allowed justice of the peace to go out and disarm individuals who were armed and going in terror of the people. And there are few things that I would find as terrifying as an individual under the influence of some substance while armed. And I think that that really fits closely here. Judge Ramirez, you asked, do we look at just the conviction or the underlying offense? And this is an as-applied challenge. So we look at the underlying offense and the conduct involved. We are specifically considering whether Mr. Contreras, based on his unique circumstances, whether the application of 922G1 is constitutional as to him. So I think that's very important that this Court can look at the underlying conduct of his original, of the predicate conviction, because it's an as-applied challenge. Well, that's not necessarily true, is it? I mean, if we get back into the whole history of categorical offenses, as applied versus facially, it did not necessarily depend on look at the underlying conduct. It looked at the statute, and did it sweep in broader offenses? Well, and I don't think any Court has suggested that we need to apply a categorical approach here, and I don't think that that would be the appropriate way of handling this analysis. I think that the categorical approach has led to some very arbitrary . . . I'm with you on that. Believe me. I'm just concerned that this could be, the Court could say, the higher Court could say, you know, the categorical approach should apply here. And so, again, I'm just going to push back on that idea. And I'm asking you to tell me why. Yes. So, sort of felony by felony litigation would be very problematic in this situation, not just because it's unworkable, but also because it's actually inconsistent with Rahimi. And so, if we go into this categorical approach, a predicate, you know, felony by felony, then suddenly this Court is looking for a historical twin. And we know that that's not what the Court needs to do here, right? That Rahimi told us that the appropriate analysis is whether the principles underpinning our historical tradition are consistent with this. And so Rahimi is instructing this Court to look for broad principles, not historical twins. And when you start applying a categorical approach, that, you know, predicate by predicate, that becomes... Well, in Diaz, we looked at theft. Right. We didn't look at necessarily the specific circumstances of his theft. We just said categorically theft was in the relevant founding time, punishable by death. So, if we're talking about possession by an intoxicated person, do we look at the facts of the particular possession by an intoxicated person or just generally what the law allowed? I think that you look at the conduct underlying that predicate and a couple of reasons why. So, if we're looking for specific predicates at the founding, then the reality is there are few and far certainly, there just weren't as many felonies at the founding. Now, that doesn't necessarily mean that we weren't disarming people who were considered dangerous. I would also say that if we start looking only at that, then you're relegating modern-day society to the policy choices of the 18th century. And I don't think that's what this Court was instructed to do under Rahimi. And it also assumes that the legislatures were maximally exerting their legislative power, which we also know is not true. Just because the legislature did not prohibit this kind of conduct does not mean that they felt they could not, that it would not have been within their power to do so. I also want to talk about the Diaz case in the sense that, you know, Diaz Diaz discerned these two aspects of our historical tradition that we have serious and permanent punishment for certain crimes. And then it went farther and it talked about how we also had permanent disarmament for a crime. And then Diaz said that because in that situation we have a convicted car thief and that the application of 922G1 is consistent as to that convicted car thief. Here, we actually have a more serious predicate offense. This is an individual who is at least as dangerous as Diaz in third-degree car theft. And one of the reasons we know that is because it actually has a higher penalty. So Diaz's third-degree car theft was subject to, at most, a two-year maximum term of imprisonment, whereas Contreras's offense below is now subject to a 15-year maximum penalty. And Contreras's sentence also involved the actual misuse of a firearm that closely resembles that going-armed conduct. So I think that Diaz actually lines up with affirming here. So again, if there aren't any further questions, I would just point this Court to the Third Circuit's opinion and more. I think that that's, you know, we don't have to answer all of the questions that have been raised today about permanency, about the categorical approach. These are ways in which, if the Court wanted to incrementally sort of approach these problems that we're seeing at a pretty rapid pace, you could look to that Third Circuit opinion, which is supported by the Sixth Circuit and the Seventh Circuit as well. And alternatively, this Court could affirm based on the broad principle that this Nation has a history of disarming individuals for committing serious crimes and who pose a special danger of firearm misuse. Thank you. Your Honors, to look a little closer at Diaz, which is a case that this Court will be considering in deciding this, it's important to note all of the underlying predicate offenses that were available to this Court in Diaz. So you had car theft, you had evading arrest, you had multiple vehicle break-ins, and you had the possession of methamphetamines while possessing a firearm. With all of those as predicate offenses, the only circumstance this Court found to be sufficient to focus on when finding that one was constitutional as applied was the theft. And the reason, so evading arrest was not relevant, vehicle break-ins not relevant, possession of drugs and a handgun not relevant, because the only one that is a capital punishment offense, when you go back in time to when the Second Amendment was adopted, was theft. And it is an important distinction. It's actually the pivotal distinction, whether it's a permanent disarmament or a temporary disarmament. And the reason for that, and you see that threaded throughout all of the available cases, when it is a permanent disarmament, this Court and the Supreme Court has looked to permanent punishments. Ones that got the death penalty, there is some discussion of property forfeiture, but there's been a lot of criticism of that as well. It argues that this is not necessarily permanent disarmament. It is under the statute. And when we look at the statute and the way the statute is written, it is you are not allowed to possess a firearm at any time once you are a felon in possession. And that right can never be restored. It could be, but that's not a part of the analysis for this Court when looking at a facial challenge. So look at the statute as written, in a vacuum, or be as applied, because at this time Mr. Contreras does not have any ability to go and try to get that given back to him, to maybe get a pardon, to maybe have something set aside. That's not the circumstances before this Court. And when this Court looks at whether G-1 has a historical analog, the cases show this Court and the Supreme Court look for permanent punishments. It's not fair to Mr. Contreras or anyone else, for that matter, to say, well, you might be able to get it back at some point. That's not built into the statute. That's not the way the statute's written. The statute is permanent disarmament. We must look at it as is. And that's why the other cases we're looking for, death penalty cases and things like that, because you're looking for permanent historical analogs. And there are some in 922 that are temporary, but that's not what he was charged with. He was charged with the permanent disarmament statute. The question about whether the fact that he was on supervised release is a factor, absolutely a factor with regard to his revocation case. That's also a case before this Court. And I've been spending my time today talking about the G-1 offense. The revocation case is a tougher haul for Mr. Contreras. He was possessing a firearm when he was under a supervised release condition that he wasn't supposed to. That's his revocation case. When this Court is looking at G-1, we're talking about was that predicate offense sufficient or does it crumble when stepped upon to try to get to that felon in possession charge? And the reason that it's important to look at the permanency of it is because when this Court looks at the Goins case, which is something that opposing counsel brought up, and that's a Sixth Circuit opinion, a G-1 opinion, there's a concurring opinion in there. So the Sixth Circuit upheld G-1 in that circumstance. Fourth DWI, driving while under the influence, driving with a handgun. The Sixth Circuit also had a concurring opinion that talked about the fact that this, our founders knew about drug use, knew about alcohol use. It was rampant at the time the Second Amendment was adopted, yet they included the people in the term. Thank you, Your Honor. Counsel, you are court-appointed. We very much appreciate your representing your client today. You've done an excellent job. Thank you, Your Honor.